**PIKE COUNTY TAX CLAIM BUREAU**

v.

**The INTERNAL REVENUE SERVICE, Conashaugh Lakes Community Association, Inc. and The Owners, Lienholders and Other Parties in Interest set forth on the attached liens sheets marked Exhibit "A", Appellants.**

Commonwealth Court of Pennsylvania.

Argued June 5, 2006.
Decided July 3, 2006.

Thomas F. Farley, Hawley, for appellant.

Shelli L. Whitmer, Milford, for appellee.

BEFORE: McGINLEY, Judge, and SMITH–RIBNER, Judge, and FRIEDMAN, Judge.

OPINION BY Judge SMITH–RIBNER.

Conashaugh Lakes Community Association, Inc. (Association) appeals from the order of the Court of Common Pleas of Pike County that denied the Association's exceptions to a judicial sale of seven properties in its community and permitted the properties to be sold at judicial sale free and clear of all liens. The question presented is whether the Association can require the Pike County Tax Claim Bureau (Bureau) to notify prospective purchasers that all lots in the Association's community sold at judicial sale are bound by Association by-laws, rules and regulations and that a building permit will not be issued if there are any unpaid dues or assessments owed to the Association.

The Bureau filed a petition for a rule to show cause on November 18, 2004, listing properties in the county to be sold at judicial sale with nine of them located in the Association's community.[1] The trial

---

1. The petition included Lot 5904, Section 17 (dues owed $9451.67); Lot 3410, Section 15 (dues owed $13,811.15); Lot 4501, Section 16 (dues owed $41,607.67); Lot 2603, Section 11 (dues owed $10,754.05); Lot 6103, Section 18 (dues owed $12,847.51); Lot 5219, Section 18

court made the rule returnable by January 17, 2005. On January 11, 2005, the Association filed an answer and new matter requesting the trial court to permit the judicial sale to proceed but with the understanding that, although its liens on the properties are divested, a building permit will not be issued for any lots sold if dues and assessments were owed to the Association. The remaining seven properties were removed pending litigation.

█ The trial court concluded that the relief requested by the Association could not be awarded under the law, that a judicial sale divests the Association of its liens for unpaid dues and assessments pursuant to Section 5315 of the Uniform Planned Community Act (Planned Community Act), 68 Pa.C.S. § 5315, [2] and that

survival of the Association's lien on the property would violate this section. Citing to Section 612 of the Real Estate Tax Sale Law (Tax Sale Law), Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. § 5860.612, the trial court further concluded that the proposed non-issuance of a building permit for a prior owner's failure to pay dues and assessments interferes with a purchaser's absolute title to the property and fee ownership. In its Rule 1925(a) opinion, the trial court stated that the new property owner must abide by the rules, regulations and by-laws of the Association as to all future fees associated with the property but that placing restrictions on the property due to actions of prior owners and refusing to issue a building permit until outstanding dues and assessments were paid was tantamount to legal blackmail.[3]

---

(dues owed $30,725.09); and Lot 3516, Section 15 (dues owed $33,575.75). Lot 3517, Section 15 and Lot 4401, Section 16 were removed because delinquent taxes were paid.

2. Section 5315 of the Planned Community Act was amended effective January 31, 2005. Section 5315 in effect at the time of the commencement of this proceeding provided:

    **(a) General rule.**—The association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes due. The association's lien may be foreclosed in a like manner as a mortgage on real estate. . . .
    **(b) Priority of lien.**—
    **(1) General rule.**—A lien under this section is prior to all other liens and encumbrances on a unit except:
    (i) Liens and encumbrances recorded before the recording of the declaration.
    (ii) First mortgages or deeds of trust on the unit securing first mortgage holders and recorded before due date of the assessment if the assessment is not payable in installments or the due date of the unpaid installment if the assessment is payable in installments.
    (iii) Liens for real estate taxes and other governmental assessments or charges against the unit.

    **(2) Limited nondivestiture.**—The association's lien for common expenses shall be divested by a judicial sale of the unit:
    (i) As to unpaid common expense assessments made under section 5314(b) (relating to assessments for common expenses) that come due during the six months immediately preceding institution of an action to enforce collection of a lien against a unit by a judicial sale, only to the extent that the six months' unpaid assessments are paid out of the proceeds of the sale.
    (ii) As to unpaid common expense assessments made under section 5314(b) other than the six months' assessment referred to in subparagraph (i), in a full amount of the unpaid assessments, whether or not the proceeds of the judicial sale are adequate to pay these assessments. To the extent that the proceeds of the sale are sufficient to pay some or all of these additional assessments after satisfaction in full of the costs of the judicial sale and the liens and encumbrances of the types described in paragraph (1) and the unpaid common expense assessments that come due during the six-month period described in subparagraph (i), the assessments shall be paid before any remaining proceeds may be paid to any other claimant, including the prior owner of the unit.

The Association states that certain property owners in its community have been avoiding paying dues and assessments by allowing their property to be sold at judicial sale. In one situation the property owner holds a lot for a period of time and fails to pay real estate and county taxes. The property owner allows another family member not living with the owner to buy the property at judicial sale. The other situation occurs when an individual sells a lot to another individual and holds a mortgage on the property. The purchaser fails to pay real estate taxes and then conveys the property back to the prior owner who does not record the deed. The Association and the Bureau take action only against the second owner, and the first owner thus avoids paying dues, assessments and taxes on the property. In such situations, the Association contends, the same properties are continually sold at judicial sale and it never receives the delinquent dues and assessments.

To prevent these situations, the Association requests that prospective purchasers be advised that the properties sold are bound by the Association's by-laws, rules and regulations and that if a property is subject to unpaid dues and assessments, a building permit will not be issued until it is brought back into "good standing." [4] The Association contends that it would accomplish this by meeting with a new owner to reach a resolution on outstanding dues and assessments. The Association concedes that under Section 5315(b)(2) of the Planned Community Act its liens are di-

vested by judicial sale, but it simply wants to control the purchase of lots so that an individual cannot continue to buy properties and hold them in inventory.

The Association cites *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995), to support its position that refusal to take a requested action that would affect property is not tantamount to control of that property or the enforcement of a lien against it. In *Strumpf* the bank placed an administrative hold on that part of a borrower's checking account claimed by the bank to be subject to setoff, i.e., the bank refused to pay withdrawals from the account that would reduce the balance below the amount that was due on the borrower's loan. The borrower previously had filed for bankruptcy. After placing the hold, the bank filed a motion for relief from automatic stay and for setoff, and the borrower filed a motion for contempt alleging that the bank had violated the automatic stay provision of Section 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a). In reversing the Court of Appeals' decision that the setoff violated the automatic stay provisions, the Supreme Court held that the bank's "temporary refusal to pay was neither a taking of possession of [the borrower's] property nor an exercising of control over it, but merely a refusal to perform its promise." 516 U.S. at 21, 116 S.Ct. at 290. The Court recognized the general rule, with certain exceptions, that the right of setoff that a creditor (bank) possessed prior to a debtor's (borrower's) filing for bankruptcy is not affected by the

---

**3.** The Court's review is limited to determining whether the trial court abused its discretion, clearly erred as a matter of law or rendered a decision with a lack of supporting evidence. *Michener v. Montgomery County Tax Claim Bureau*, 671 A.2d 285 (Pa.Cmwlth.1996).

**4.** The Association's "Property Improvement and Building Code" provides that a property owner should not present any plans to the Design/Review–Strategic Planning Committee unless they are current with all dues and assessments and that a building permit will not be issued if dues and assessments are unpaid. N.T., Exhibit 4, p. 1.

automatic stay provisions of the Code. The Association presumably argues that its withholding building permits until outstanding dues and assessments are paid is no different from the bank's temporary refusal to pay funds in the account in *Strumpf.*

The Bureau responds that it has no duty, responsibility or authority under the law to do what the Association has proposed. Further, the Association's standard is too vague and speculative to enforce: a prospective purchaser will have no idea what the Association will expect or require in order to bring the property into good standing, and to allow survival of unpaid dues and assessments beyond the judicial sale will have a chilling effect on the sale of properties in the community at future judicial sales. It emphasizes that the Association has a lien on a particular property for any unpaid dues and assessments charged to that property from the time that these charges become due and that the Association can enforce its lien before the property is listed for judicial sale in the same manner as in foreclosure on a mortgage. *See* Section 5315(a) of the Planned Community Act.

Pursuant to Section 5315(b)(2) of the Planned Community Act, the Association's lien for common expenses against any property in the community shall be divested by a judicial sale of the property. Any of the Association's expenses that were due six months prior to the sale will be satisfied after payment of costs of the sale, liens and encumbrances recorded before the declaration, first mortgages or deeds of trust recorded before the dues were assessed, delinquent taxes and any government assessments or charges. Section 5315(b)(2)(ii). If any proceeds remain, the rest of the Association's lien will be paid. *Id.* This Court has held that the Tax Sale Law "contemplates the divestiture of all liens, with no exception, when a property is exposed to a judicial sale." *City of Allentown v. Kauth,* 874 A.2d 164, 167 (Pa.Cmwlth.2005).

The Association has offered no statutory or case law authority for its request that the Bureau be required to advise all prospective purchasers at a judicial sale of property within the community that a building permit would not be issued for any lots sold if dues and assessments were owed on the property. It is evident that the Association is attempting to retain its lien on the property after it has been sold at judicial sale, which violates not only Section 5315(b)(2) of the Planned Community Act but Section 612(a) of the Tax Sale Law as well. Additionally, the issue in *Strumpf* was decided based on the court's interpretation of applicable statutory and case law authority whereas here neither statute nor case law permits the relief sought. Because the trial court committed no error of law or abuse of its discretion in denying exceptions to the judicial sale of seven properties in the Association's community, the Court affirms the order of the trial court.

## ORDER

AND NOW, this 3rd day of July, 2006, the Court affirms the order of the Court of Common Pleas of Pike County in the above-captioned matter.