STATE OF CONNECTICUT *v.* BRYAN LINDO
(AC 22833)

Foti, Dranginis and West, Js.

Argued December 6, 2002—officially released March 11, 2003

*Glenn W. Falk*, special public defender, with whom, on the brief, was *Michael T. Morley*, law student intern, for the appellant (defendant).

*Christopher T. Godialis*, assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Gail P. Hardy* and *Robin Lipsky*, assistant state's attorneys, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Bryan Lindo, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a (a).[1] On appeal, the defendant claims that he was deprived of his rights to due process and a fair trial pursuant to the fourteenth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut because of prosecutorial misconduct during closing argument and cross-examination of him that precluded the jury from giving fair consideration to his affirmative

---

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be . . . ."

defense of extreme emotional disturbance.[2] He also claims that the court improperly instructed the jury on the affirmative defense of extreme emotional disturbance. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant and the victim, Nadine Davis, had known each other for a number of years and had two children together. In 1997, they moved into an apartment on Mahan Street in Waterbury. In 1998, the defendant discovered that the victim had gone on a trip with a man, Charles "Terry" Douglas, whom the defendant had suspected for years of having an affair with the victim. He also learned of a second trip taken by the two that same year. On one occasion, during an argument concerning Douglas, the defendant grabbed the victim and shook her. Around that time, the defendant moved out of the apartment, but continued to visit by using the children to gain access. On June 9, 1998, while on one of these visits, he played the victim's answering machine tape and heard Douglas say, "I love you." At 1 a.m. the following day, he returned to the victim's apartment, awakened her and confronted her with his allegations. He head butted her and left. The victim, on the following day, obtained an ex parte restraining order, which was served on the defendant.

On July 15, 1998, the defendant, who had obtained a key from one of his daughters, went to the apartment with a knife wrapped in a towel; nevertheless, he left the apartment without incident. He returned to the

---

[2] Although the defendant claims his due process rights were violated under both the United States constitution and the constitution of Connecticut, he has not provided a separate analysis for his state constitutional claim. Accordingly, we deem it abandoned and will not afford it review. See *State* v. *Hill*, 58 Conn. App. 797, 799–800 n.4, 755 A.2d 919, cert. denied, 254 Conn. 936, 761 A.2d 763 (2000); see also *State* v. *Geisler*, 222 Conn. 672, 684–85, 610 A.2d 1225 (1992) (providing tools of analysis to be used to construe contours of state constitution).

apartment, however, on July 18, 1998, at 9:30 a.m. and confronted the victim about someone he thought he saw leaving out the back door. He chased the victim from her apartment and killed her in the parking lot with a knife. The defendant stabbed the victim numerous times and slashed her throat. There were two witnesses to the killing. The defendant ran from the scene, taking the murder weapon with him. Before dying, the victim named the defendant as her assailant. The defendant thereafter admitted that he killed the victim. Where necessary, additional facts will be supplied.

I

The defendant first claims that the prosecutor's closing argument precluded the jury from giving his affirmative defense of extreme emotional disturbance fair consideration, thus depriving him of due process and a fair trial. The defendant preserved some of the claimed remarks for review by objecting at trial. His claim, however, also includes statements that were not properly preserved. He seeks review of those statements pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[3]

"Prosecutorial misconduct may . . . occur in the course of closing argument. . . . Such argument may be, in light of all of the facts and circumstances, so egregious that no curative instruction could reasonably be expected to remove [its] prejudicial impact. . . . We do not focus alone, however, on the conduct of

---

[3] Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error "only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. . . .

"[T]o determine whether claims of prosecutorial misconduct amounted to a denial of due process, we must decide whether the challenged remarks were improper, and, if so, whether they caused substantial prejudice to the defendant. . . . To make this determination, we must focus on several factors: (1) the extent to which the misconduct was invited by defense conduct or argument; (2) the severity of the conduct; (3) the frequency of the conduct; (4) the centrality of the misconduct to the critical issues of the case; (5) the strength of the curative instructions adopted; and (6) the strength of the state's case." (Internal quotation marks omitted.) *State* v. *Morgan,* 70 Conn. App. 255, 284–85, 797 A.2d 616, cert. denied, 261 Conn. 919, 806 A.2d 1056 (2002).

"When a verdict is challenged on the basis of the prosecutor's allegedly prejudicial remarks, the defendant bears the burden of proving the remarks prejudicial in light of the whole trial." (Internal quotation marks omitted.) *State* v. *Williams,* 65 Conn. App. 449, 466, 783 A.2d 53, cert. denied, 258 Conn. 927, 783 A.2d 1032 (2001).

"[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, and not the culpability of the prosecutor. . . . The issue is whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." (Citation omitted; internal quotation marks omitted.) *State* v. *Brown,* 256 Conn. 291, 306, 772 A.2d 1107, cert. denied, 534 U.S. 1068, 122 S. Ct. 670, 151 L. Ed. 2d 584 (2001). Furthermore, our Supreme Court in *Brown* reaffirmed that a defendant's *Golding* claim will not be successful

if the alleged misconduct "merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout the trial." (Internal quotation marks omitted.) Id.

Accordingly, we analyze the defendant's claims under a two step process. First, we determine whether the challenged statements were improper and, second, if so, we determine whether they caused the defendant substantial prejudice. See *State* v. *Garrett*, 42 Conn. App. 507, 515–16, 681 A.2d 362, cert. denied, 239 Conn. 928, 929, 683 A.2d 398 (1996).

The prosecutor commented to the jury in her rebuttal argument: "So, what [the defendant is] really saying to you for most of his defense is [that] this [is] extreme emotional disturbance, and I sat here and I listened just like you sat here and listened, and you say to yourself, where is it? Where is it? Is he really trying to say to you, the jury, that he had a right because that is what you need to find? What it is, it's a justification for the conduct. It's saying, okay, I did it, but because of the circumstances, I was justified in doing—understand why I did it. So, is he really standing up here and saying to you that because—he felt that Nadine Davis might have been involved with this man [Douglas], that created circumstances that were so emotional for him that it allowed him to stab her seventeen times? Think to yourself if that makes any sense."

Thereafter, in conclusion, the prosecutor argued regarding extreme emotional disturbance that "to say, yes, it's okay that he did that because he was under such emotion is to justify every form of domestic violence and almost every form of murder." The defendant argues that "[t]hese comments grossly perverted the true nature of the affirmative defense and essentially stigmatized jurors considering it." The defendant failed

to object at trial to those statements and concedes that, in part, his claim is unpreserved.

The defendant also asserts that there were additional comments by the prosecutor that were "legally incorrect arguments and analogies that were substantially likely to mislead the average juror in weighing [the defendant's] claims." In both instances, the court overruled the defendant's objection.

The prosecutor argued: "This is not a case—you know, sometimes you have these cases of extreme emotion and you have an issue of—something that you may have heard, an idea of overkill. Somebody is standing over a body and just shooting, shooting, shooting an empty gun even at that point into the body, stabbing, stabbing, stabbing, having no concept. We're not seeing that here . . . ."

The prosecutor also argued: "Last night, I was reading over the testimony of the defendant . . . . [The defense attorney] says to him, well, why did you stab her, and [the defendant] says, maybe out of frustration, anxiety. I can't say. I don't know. He doesn't say he lost it. He doesn't say it's an extreme reaction . . . . He's saying to you, I don't even know, I can't even say. If he can't even say, how can you, the jury, assume it by a preponderance of the evidence?"

We first address the unpreserved statements. Because the record is adequate for review and the defendant has alleged a claim of constitutional magnitude by asserting that the statements deprived him of his right to a fair trial, we proceed by considering whether under *Golding*'s third prong he can show a clear constitutional violation that deprived him of a fair trial.

The defendant never claimed justification as a defense. See General Statutes § 53a-16. The defenses of justification and extreme emotional disturbance are

separate and distinct. When the prosecutor stated that "what he's really saying to you for most of his defense is [that] this [is] emotional disturbance" and then, "[w]hat it is, is justification for the conduct," she improperly attempted to introduce an extraneous factor into the affirmative defense of extreme emotional disturbance. We cannot accept that the use of "justification" is being misinterpreted, as the state claims in its brief, because it was used only to "convey the legal requirement that the defendant must prove [extreme emotional disturbance] 'for which there was a reasonable explanation or excuse.' " The state did not characterize extreme emotional disturbance as a justification defense, but came very close to implying to the jury that if the jury accepted the defendant's extreme emotional disturbance defense, that would be the same as finding that he was justified in the killing of the victim. As such, the statements were improper. Taken as a whole, however, the prosecutor's remarks did not undermine the defendant's extreme emotional disturbance defense or make a difference in the outcome.

Our review of the record shows that the court expressly stated in its charge to the jury that the arguments and statements by the attorneys were not evidence in the case and that the jury was to accept the law as given by the court. The court instructed the jury on the affirmative defense of extreme emotional disturbance. Without any indication to the contrary, we presume that the jury followed the court's instructions. See *State* v. *Velasco*, 253 Conn. 210, 246, 751 A.2d 800 (2000); *State* v. *Rivera*, 61 Conn. App. 763, 773, 765 A.2d 1240, cert. denied, 256 Conn. 901, 772 A.2d 599 (2001). The record does not disclose any indication that the jury disregarded those instructions. Although we find that portions of the prosecutor's statements were improper, we conclude that the defendant's claim fails to satisfy the third prong of *Golding* because, as a

whole, the statements did not substantially prejudice him so as to deprive him of a fair trial.

As to the statements that were objected to at trial, we do not find them to be improper. Remarks that are nothing more than a permissible appeal to the jurors' common sense do not constitute prosecutorial misconduct. See *State* v. *Downing*, 68 Conn. App. 388, 399, 791 A.2d 649, cert. denied, 260 Conn. 920, 797 A.2d 518 (2002). The state also is entitled to comment on the weaknesses in the defendant's case and on the strength of its case. *State* v. *Magnotti*, 198 Conn. 209, 220, 502 A.2d 404 (1985). The state is free to remark on the defendant's failure to support his factual theories; *State* v. *Kluttz*, 9 Conn. App. 686, 708, 521 A.2d 178 (1987); as was the situation in this case, in which the defendant could not articulate his state of mind at the time of the killing.

We cannot conclude that the prosecutor's statements precluded the jury from giving his affirmative defense of extreme emotional disturbance fair consideration or otherwise deprived him of due process and a fair trial. The defendant has failed to meet his burden of proving that the remarks were substantially prejudicial in light of the whole trial.

II

The defendant next claims that on two occasions during her cross-examination of him, the prosecutor engaged in "severely prejudicial misconduct" that deprived him of his right to have the jury duly consider his testimony, which was the basis of his extreme emotional disturbance defense. Specifically, the defendant claims that "the prosecutor repeatedly took the opportunity to testify herself, ask impermissible questions designed to inflame the passions of the jury, misdirect the jury's attention to irrelevant issues, introduce facts

not in evidence and wrongly attack [the defendant's] credibility."

Without the necessity of repeating each and every question, objection and court action, it suffices to say that our review of the record discloses that the court admonished the prosecutor on numerous occasions to ask the question and give the defendant the opportunity to answer. The court intervened many times during the cross-examination, after which the defendant filed a motion for a mistrial. He claimed that he was deprived of a fair trial and that the prosecutor's comments had caused substantial and irreparable prejudice to his case. The court denied the motion.

"The principles that govern our review of a trial court's ruling on a motion for a mistrial are well established. Appellate review of a trial court's decision granting or denying a motion for a [mistrial] must take into account the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided. . . . Thus, [a] motion for a [mistrial] is addressed to the sound discretion of the trial court and is not to be granted except on substantial grounds. . . . In [its] review of the denial of a motion for mistrial, [our Supreme Court has] recognized the broad discretion that is vested in the trial court to decide whether an occurrence at trial has so prejudiced a party that he or she can no longer receive a fair trial. The decision of the trial court is therefore reversible on appeal only if there has been an abuse of discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *Whipper*, 258 Conn. 229, 257, 780 A.2d 53 (2001). We further reiterate that "[t]he standard that we follow in analyzing constitutional due process claims that allege prosecutorial misconduct is the fairness of the trial rather than the culpability of the prosecutor's conduct." Id., 262.

In denying the motion for a mistrial, the court, along with making other findings, concluded that any impro-

prieties were cured by its instructions and admon-
ishments, and had no bearing on the critical issue of
the defendant's intent, and, therefore, did not have an
adverse effect on his defense of extreme emotional dis-
turbance.[4]

---

[4] The court reasoned: "I think that it's rather clear, and it was certainly
clear on Friday, that the court did not feel that the manner in which the cross-
examination was being conducted was appropriate. There is no question that
rhetorical questions were asked and that statements were made, and that
those, in many instances, were inappropriate. The question, however, for
the court is not whether appropriate questions were posed or inappropriate
statements were made, but rather, whether or not those statements were
so prejudicial as to deny the defendant his constitutional right to due process.

"Essentially, the statements and rhetorical questions fall into two catego-
ries. Category of statements which were reiterative of testimony previously
given. And while that is inappropriate, on balance, looking at all the testimony
in the case, the court concludes that those statements in and of themselves,
taken in their totality, are not sufficient basis to grant the defense's motion
for a mistrial. Because . . . those were facts already in evidence. And they
weren't repeated time and time again. [They] were stated and, in some
instances, stated in response to answers given by the defendant that were
oblique or less than candid or carefully crafted to create an impression that
was inconsistent with other testimony in evidence. The court notes that the
defendant in providing those kinds of responses may have, in fact, invited
some of those statements.

"As far as the severity is concerned, given the fact that most of those
statements again were statements of fact already in evidence, minimize, to
a great extent the severity of those statements and questions. . . . So, in
that sense, they are truisms which certainly could have been stated by
counsel during their closing argument, and so the timing of the statement
by the state certainly would not deny the defendant his constitutional rights
to due process. Were these statements and rhetorical questions pertinent
to the central issue in the case? The central issue in this case is really the
defendant's mental state at the time, and the defendant indicated on the
[witness] stand that he didn't know what his mental state was, and none
of these rhetorical questions and none or these statements dealt with the
defendant's mental state at the time and, therefore, none of them deal with
the central issue in this case. . . .

"[I]f the court is to balance to determine whether or not due process has
been denied, then the court would be remiss in ignoring the strength of the
state's case and, in this instance, the state's case is extremely strong. Two
eyewitnesses testified at some length as to what they saw, two eyewitnesses
to the entire episode and yet another eyewitness to a portion of that episode.
There is no medical testimony . . . whatsoever, and while that is not in
and of itself a reason for that defense to be affected to fail, certainly that

## Although we are disturbed by some of the prosecutor's remarks and actions,[5] on the basis of our review

minimizes the strength of the defense case and, in light of the incredible strength of the state's case, that is the significant factor which the court has got to consider in that balancing.

"The court did admonish the jury three times during the course of the cross-examination, which cast [the prosecutor] in a very poor light while at the same time the defendant maintained his composure, maintained his focus and, quite frankly, I believe made the better impression of the two, and so I do not believe that the cross-examination of the defendant harmed him in any way. If anything, it made him look magnanimous by comparison. The other category of statements, well, say, i.e., that Nadine Davis is not here, that she is dead, those statements clearly were made, in my mind, to inflame the jury's passions. Question is, did they inflame the jury's passions? Question is, if they did, to what extent did they inflame the jury's passions? The mere statement that Nadine Davis is dead pales by comparison to the numerous autopsy photographs of her body and the various seventeen individual wounds to her body; pales by comparison to the eyewitness testimony, to eyewitness testimony, to the effect that the defendant grabbed her by her hair, yanked her head back and sliced her neck with the most— the deepest penetrating cut of all seventeen.

"Nothing could begin to be more prejudicial to the defendant than that testimony and those pictures. Statements made by [the prosecutor] were mild by comparison. On balance, the court concludes that the defendant was not so unduly prejudiced by the impropriety of statements made during cross-examination as to deny him a fair trial; that, on balance, the cross-examination was harmful to the state and, in fact, beneficial to the defendant, whose composure and adherence to his position made him look like he was being victimized and created sympathy on the part of the jury for the defendant, not for the victim. For those reasons, the defense motion is denied."

The court instructed the jury on that issue as follows: "During cross-examination, the state made repeated statements and asked repeated rhetorical questions, and I remind you that statements of counsel are not evidence and cannot be considered by you. Also, many of those statements and questions could have the effect of evoking sympathy for the victim, Nadine Davis. Ladies and gentlemen of the jury, sympathy has no place in this case; sympathy has no place in your deliberations. Your job is to dispassionately and objectively apply the law as I have described it to the facts as you find them to be based upon the evidence in this case and not on the statements of counsel which do not, I remind you, constitute evidence. As I admonished you during cross-examination, you are, therefore, ordered to disregard the statements and rhetorical questions of [the prosecutor]."

[5] In one instance, the prosecutor remarked about the victim being unavailable to refute the defendant's testimony on a point. The jury was ordered to disregard that remark. The prosecutor, however, again later began to

of the record, we agree with the well reasoned analysis of the court and conclude that the conduct complained of was not substantially prejudicial in the context of the entire trial as to deny the defendant due process and a fair trial. Accordingly, we further conclude that the court did not abuse its discretion and properly denied the defendant's motion for a mistrial.

### III

The defendant next claims that the prosecutor impermissibly injected irrelevant and highly prejudicial considerations into the jury deliberations by cross-examining him about his status as an illegal immigrant.

During the cross-examination, the following colloquy took place:

"[Prosecutor]: And isn't it, in fact, true that you're not legally here?

"[Defendant]: Yes.

"[Prosecutor]: You're a citizen?

"[Defendant]: I'm not a citizen.

"[Prosecutor]: So, what is your status?

"[Defendant]: My status is one that my mom has filed for me.

"[Prosecutor]: No, what is your permanent status with [the United States Immigration and Naturalization Service (INS)]?

"[Defendant]: It's one which my mom has filed for permanent residence with me.

---

remark before the jury about the victim's unavailability, and the defendant objected. The court again instructed the jury to disregard the question. The prosecutor then commented, "correct," when the defendant, in answer to a question, responded that the victim did not need his permission to go on a trip without him.

"[Prosecutor]: Are you, in fact, aware that INS . . . lists you as being illegally here?

"[Defendant]: No, I'm not aware of that."

The defendant did not preserve his claim at trial and now argues that it warrants *Golding* review.[6] We do not agree and decline to review his unpreserved evidentiary claim, which masquerades as a constitutional claim of prosecutorial misconduct. See *State* v. *Barber*, 64 Conn. App. 659, 671, 781 A.2d 464, cert. denied, 258 Conn. 925, 783 A.2d 1030 (2001). We do not afford review of an unpreserved evidentiary claim. *State* v. *Teel*, 42 Conn. App. 500, 504–505 n.5, 681 A.2d 974, cert. denied, 239 Conn. 921, 682 A.2d 1012 (1996).

IV

The defendant's final claim posits that the court improperly instructed the jury as to his affirmative defense of extreme emotional disturbance. Specifically, he argues that the court incorrectly used the phrase "extremely unusual or overwhelming state" to define and to explain extreme emotional disturbance. The defendant claims that the jury instructions were "constitutionally deficient," thereby requiring reversal of the judgment under plain error review or *Golding* review.[7]

"Extreme emotional disturbance operates as a partial affirmative defense to murder. One who kills while under the influence of an extreme emotional disturbance cannot be convicted of murder but can be found guilty of manslaughter." *State* v. *Fair*, 197 Conn. 106, 108, 496 A.2d 461 (1985), cert. denied, 475 U.S. 1096, 106 S. Ct. 1494, 89 L. Ed. 2d 895 (1986).

To prevail, a defendant must persuade the trier of fact, by a preponderance of the evidence, that "(1) the

---

[6] See footnote 3.

[7] See footnote 3.

emotional disturbance is not a mental disease or defect that rises to the level of insanity as defined by the penal code; (2) the defendant was exposed to an extremely unusual and overwhelming state, that is, not mere annoyance or unhappiness; and (3) the defendant had an extreme emotional reaction to it, as a result of which there was a loss of self-control, and reason was overborne by extreme intense feeling, such as passion, anger, distress, grief, excessive agitation or other similar emotions." (Internal quotation marks omitted.) *State* v. *Patterson*, 229 Conn. 328, 341, 641 A.2d 123 (1994); see also *State* v. *Melendez*, 74 Conn. App. 215, 225–26, 811 A.2d 261 (2002).

The defendant filed a request to charge, asking the court to instruct the jury that he "was exposed to an *extremely unusual and overwhelming stress* that [was] more than mere annoyance or unhappiness" and that he "had an extreme emotional reaction to that state, as a result of which there was a loss of self-control . . . ." (Emphasis added.)

*Golding* review is not warranted, as an improper jury instruction concerning the affirmative defense of extreme emotional disturbance is not of constitutional dimension. *State* v. *Austin*, 244 Conn. 226, 244, 710 A.2d 732 (1998); *State* v. *Foreshaw*, 214 Conn. 540, 546, 572 A.2d 1006 (1990). As a general rule, a party cannot be heard to complain about an instruction when he himself has requested it and the claimed error is not of a constitutional dimension. *State* v. *Marra*, 195 Conn. 421, 443, 489 A.2d 350 (1985).

Additionally, the defendant's claim does not warrant review under the plain error doctrine, which provides in relevant part that we "may in the interests of justice notice plain error not brought to the attention of the trial court. . . ." Practice Book § 60-5. To prevail under that doctrine, the defendant must show that the claimed

error is so clear and harmful that manifest injustice would result in failing to reverse the judgment. Review is not undertaken unless the error is so obvious that "it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Lindstrom,* 46 Conn. App. 810, 817, 702 A.2d 410, cert. denied, 243 Conn. 947, 704 A.2d 802 (1997).

Our review of the jury instruction on extreme emotional disturbance leads us to conclude that there is no reasonable possibility that it misled the jury; it was given substantially as requested and was sufficient to guide the jury to a correct verdict.

The judgment is affirmed.

In this opinion the other judges concurred.