******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* DOMINICK J. DEVITO
(AC 35815)

Gruendel, Prescott and Bishop, Js.

*Argued March 5—officially released September 8, 2015*

(Appeal from Superior Court, judicial district of
Litchfield, geographical area number eighteen,
Marano, J.)

*Mary A. Beattie*, assigned counsel, for the appellant (defendant).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *David S. Shepack*, state's attorney, and *Meredith Blake*, special deputy assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Dominick J. Devito, appeals from the judgment of conviction, rendered after a jury trial, of one count of operating a motor vehicle while under the influence of intoxicating liquor or drug in violation of General Statutes § 14-227a (a) (1) and one count of operating a vehicle while his license was under suspension in violation of General Statutes § 14-215 (a). On appeal, the defendant claims that (1) the trial court improperly admitted testimony regarding his post-*Miranda*[1] silence and (2) the prosecutor engaged in impropriety during the trial and in closing argument. We affirm the judgment of the court.

The following facts reasonably could have been found by the jury at trial. At approximately 2 a.m., on August 21, 2011, Robert Hazen, Jr., a state trooper, was assisting Christopher Barone, another state trooper, in effecting a traffic stop on Route 44 in North Canaan. At the time, Hazen's marked police cruiser was parked on the side of the road, facing eastbound, with its overhead flashing lights activated. While assisting Barone, Hazen heard the sound of tires screeching. As he turned, he observed a dark sports utility vehicle, approximately seventy-five yards away, make an abrupt U-turn and then pull over to the side of the road. Hazen then proceeded to enter his car, make a U-turn, and drive his police cruiser to within two car lengths of the dark sports utility vehicle. Hazen testified that he was able to move his vehicle in less than one minute and only lost visual contact with the sports utility vehicle for a second or two.

Hazen then approached the vehicle and observed one occupant, the defendant, seated in the driver's seat. At this point, the vehicle was turned off and the keys were on the floor. Hazen requested the defendant's license and registration. During this discussion, Hazen detected the smell of alcohol emanating from the vehicle. He asked the defendant if he had consumed any alcohol that evening, to which the defendant replied that he had had " 'three or four drinks.' " Hazen observed that the defendant's speech was slurred and his eyes appeared glassy. Hazen then proceeded to conduct three field sobriety tests on the defendant.[2] The defendant failed to perform adequately during each of the three tests. As a result, Hazen concluded that he had probable cause to arrest the defendant for driving under the influence.

While Hazen was performing the field sobriety tests, Joshua Holcombe, another state trooper, arrived at the scene to provide assistance. Holcombe testified that he arrived approximately ten minutes after the initial stop. When the defendant was placed under arrest, Holcombe spoke to him and could smell alcohol on his breath. Barone also arrived on the scene to provide assistance. He testified that he could not recall whether the defen-

dant had spoken to him.

The defendant was transported to the state police barracks where Hazen, in his capacity as the arresting trooper, processed the defendant. Hazen advised the defendant of his *Miranda* rights and collected background information. He then proceeded to read the defendant a notice of his rights regarding submission to a breath test.[3] After being notified of his rights, the defendant refused to submit to the test. The defendant was subsequently charged with one count of driving under the influence of intoxicating liquor and one count of driving with a suspended license. During this time, Barone assisted in processing the defendant, which included signing a document stating that he had witnessed the defendant receive notice of his rights regarding the breath test, as well as the defendant's subsequent refusal to perform the test.

The case was tried to a jury. Prior to the state's case-in-chief, the parties stipulated to the following fact: "[O]n August 21, 2011, the defendant's operator's license had been under suspension since June 29, 2011, for failing to appear for a hearing or trial in association with a non-alcohol related traffic summons."

At trial, the primary issue in dispute was whether the defendant was the driver of the dark sports utility vehicle on the night in question. The defendant argued that Barone, Hazen, and Holcombe never observed the defendant operating the vehicle and, thus, the state could not establish that he had committed the offense. Further, the defendant presented the testimony of Blake Balaam, who testified that he had been the driver of the vehicle that night. Balaam testified that he and the defendant had worked together as chefs at a restaurant until around midnight. He further testified that, after work, he and the defendant went to Balaam's house "to play cards and hang out for a little bit." Afterwards, Balaam drove the defendant back to his apartment. He testified that he usually drives the defendant home because the defendant has poor eyesight and has difficulty driving at night. He stated that, on the evening in question, consistent with his usual practice when driving the defendant, he drove the vehicle eastbound on Route 44, completed a U-turn, and parked it alongside the curb. Balaam also stated that he did not remember seeing any police cruisers on the road when he made the U-turn. He further testified that, after parking the vehicle, he placed the keys in the cup holder, exited the vehicle, and entered another vehicle driven by his girlfriend, who then drove away.

During the state's case-in-chief, the prosecutor asked Hazen, Barone, and Holcombe if they had observed any other vehicles parked or idling in the vicinity of the dark sports utility vehicle. Each state trooper affirmatively stated that they had not seen any other vehicle in the area. Hazen further testified that he observed only one

occupant in the vehicle, which was the defendant. Hazen specifically noted that he had observed the dark sports utility vehicle continuously, with the exception of a few seconds when he turned his own vehicle around, and did not see another person exit the vehicle.

At the conclusion of trial, the jury returned a verdict of guilty on both counts and the court sentenced the defendant to two years incarceration, execution suspended after six months, and three years of probation.[4] From this judgment, the defendant appeals.

I

We first consider the defendant's evidentiary claim. The defendant claims that his due process right to a fair trial was violated when the court improperly admitted testimony regarding his post-*Miranda* silence at the police station. Specifically, he argues that the "admission of evidence of post-*Miranda* silence violated his due process rights as guaranteed by the fourteenth amendment to the United States constitution in violation of *Doyle* v. *Ohio*, 426 U.S. 610, [96 S. Ct. 2240, 49 L. Ed. 2d 91] (1976) . . . ." We are not persuaded.

At the outset, the defendant acknowledges that his claim is unpreserved, and, therefore, seeks to prevail under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude, alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial." (Internal quotation marks omitted.) *State* v. *Fagan*, 280 Conn. 69, 89–90, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007); see *In re Yasiel R.*, 317 Conn. 773, 781, A.3d (2015) (modifying third prong). Here, the record is adequate for review of the defendant's claim and the allegation of a denial of due process is one of constitutional magnitude. Thus, we now consider whether the defendant can establish the existence of a constitutional violation.

"In *Doyle* v. *Ohio*, [supra, 426 U.S. 610], the United States Supreme Court held that the impeachment of a defendant through evidence of his silence following his arrest and receipt of *Miranda* warnings violates due process. The court based its holding in two considerations: First, it noted that silence in the wake of *Miranda* warnings is 'insolubly ambiguous' and consequently of

little probative value. Second and more important, it observed that 'while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.' . . . The [United States Supreme Court] reaffirmed *Doyle's* reasoning in *Wainwright* v. *Greenfield*, 474 U.S. 284, 290, 106 S. Ct. 634, 88 L. Ed. 2d 623 (1986), in which it held that the defendant's silence following his arrest and receipt of *Miranda* warnings could not be used at trial to rebut his defense of insanity. The court reasoned: 'The point of the *Doyle* holding is that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony. It is equally unfair to breach that promise by using silence to overcome a defendant's plea of insanity.' " (Citation omitted.) *State* v. *Plourde*, 208 Conn. 455, 465–66, 545 A.2d 1071 (1988).

Although evidence of the defendant's post-*Miranda* silence is prohibited, the United States Supreme Court has concluded that evidence of the defendant's silence prior to the receipt of *Miranda* warnings does not violate due process. *Fletcher* v. *Weir*, 455 U.S. 603, 102 S. Ct. 1309, 71 L. Ed. 2d 490 (1982). The court in *Fletcher* held that "[i]n the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that [admission of the defendant's silence] violates due process of law . . . ." Id., 607. In so concluding, the court quoted *Jenkins* v. *Anderson*, 447 U.S. 231, 239, 100 S. Ct. 2124, 65 L. Ed. 2d 86 (1980), which stated: "Common law traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted. 3A J. Wigmore, Evidence § 1042, p. 1056 (Chadbourn rev. 1970). Each jurisdiction may formulate its own rules of evidence to determine when prior silence is so inconsistent with present statements that impeachment by reference to such silence is probative." In accordance with this precedent, our Supreme Court has held that "[p]re-arrest silence under circumstances where one would naturally be expected to speak may be used either as an admission or for impeachment purposes." (Internal quotation marks omitted.) *State* v. *Walker*, 206 Conn. 300, 306, 537 A.2d 1021 (1988); see also *State* v. *Montgomery*, 254 Conn. 694, 714, 759 A.2d 995 (*Doyle* and its progeny apply to use of prearrest silence as affirmative proof at trial.)

During the trial, the prosecutor asked Hazen, Barone, and Holcombe whether the defendant had ever denied driving the vehicle during the course of the evening. Hazen[5] and Holcombe[6] each affirmatively stated that the defendant had never denied driving the vehicle.

Barone testified that he could not recall whether the defendant denied driving.[7] On appeal, the defendant claims that these questions reasonably could have been understood by the jury as implicating his post-*Miranda* silence.

We begin by reviewing the testimony of Barone and Holcombe and conclude that the defendant is unable to establish a due process violation with regard to their testimony. Barone testified that he could not remember whether the defendant said he was not driving on the night in question, and, thus, there was no affirmative response to the prosecutor's inquiry and no admission of evidence regarding the defendant's silence. Holcombe testified only as to the events that transpired during the traffic stop. As the record establishes that the defendant was not read his *Miranda* rights until after he was arrested and transported to the state police barracks, Holcombe's testimony could not have implicated the defendant's post-*Miranda* silence.

We now consider Hazen's testimony on both direct and redirect examination. With regard to Hazen's redirect examination, the testimony did not implicate the defendant's post-*Miranda* silence. On redirect examination, the prosecutor asked Hazen the following: "[Y]ou approached the operator [of the vehicle] and asked for what?" After Hazen responded, the prosecutor then asked the following question: "*And during that time,* did [the defendant] say he was not driving the vehicle." (Emphasis added.) Hazen answered, "No." Thus, Hazen's response on redirect examination was limited to the defendant's silence during the traffic stop. As the *Miranda* warnings were not provided until the defendant was transported to the state police barracks after the arrest was made, Hazen's redirect examination testimony was properly admissible and, thus, cannot form the basis of a due process violation.

Finally, we consider Hazen's testimony in response to the state's question during direct examination as to whether the defendant "ever directly denied driving the vehicle . . . ." The defendant contends that the question to Hazen could have been understood to encompass post-*Miranda* silence. Given the context in which the question was asked, however, it is more probable that it would have been understood to refer to the defendant's prearrest silence. Hazen's testimony was primarily focused on the defendant's conduct during the traffic stop. His only post-*Miranda* testimony related to the defendant's decision to forgo the breath test at the police station. Furthermore, the state's line of inquiry leading up to the question related only to the defendant's conduct *at the scene* rather than at the barracks. See *State* v. *Jeffrey*, 220 Conn. 698, 720–21, 601 A.2d 993 (1991) (defendant's claim failed third prong of *Golding* because, although question was ambiguous, it was more probable that question related to defendant's prearrest

silence), cert. denied, 505 U.S. 1224, 112 S. Ct. 3041, 120 L. Ed. 2d 909 (1992). We therefore conclude that the defendant cannot prevail on his unpreserved claim of constitutional error because he has failed to demonstrate that an alleged constitutional violation existed.

## II

The defendant next claims that the prosecutor engaged in impropriety, both during the trial as well as during closing argument. Specifically, the defendant claims that the prosecutor improperly (1) implicated his post-*Miranda* right to remain silent, (2) drew attention to the defendant's decision not to testify, (3) shifted the state's burden of proof to the defendant, (4) made a "golden rule" argument, (5) stated her personal opinion as to the defendant's guilt, (6) commented on information not in evidence, (7) misled the jury on two critical facts, and (8) commented on the defendant's alibi witness.

The applicable law governing claims of prosecutorial impropriety is well established. "[I]n analyzing claims of prosecutorial [impropriety], we engage in a two step process. The two steps are separate and distinct: (1) whether [an impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived [the] defendant of his due process right to a fair trial. Put differently, [an impropriety is an impropriety], regardless of its ultimate effect on the fairness of the trial; whether that [impropriety] caused or contributed to a due process violation is a separate and distinct question . . . ." (Internal quotation marks omitted.) *State* v. *Andrews*, 313 Conn. 266, 279, 96 A.3d 1199 (2014); see also *State* v. *Stevenson*, 269 Conn. 563, 572, 849 A.2d 626 (2004).

"To determine whether any improper conduct by the [prosecutor] violated the defendant's fair trial rights is predicated on the factors set forth in *State* v. *Williams* [204 Conn. 523, 540, 529 A.2d 653 (1987)], with due consideration of whether that misconduct was objected to at trial. . . . These factors include the extent to which the [impropriety] was invited by defense conduct or argument . . . the severity of the [impropriety] . . . the frequency of the [impropriety] . . . the centrality of the [impropriety] to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citation omitted; internal quotation marks omitted.) *State* v. *Felix R.*, 147 Conn. App. 206, 219, 83 A.3d 619 (2013), cert. granted on other grounds, 311 Conn. 915, 84 A.3d 883 (2014).[8]

### A

The defendant first argues that the prosecutor committed impropriety, during the trial and at closing argument, when she implicated the defendant's post-*Miranda* right to remain silent. We disagree.

We begin by analyzing the defendant's claim regard-

ing the prosecutor's questions during trial. In part I of this opinion, we concluded that the defendant failed to establish, under *Golding*, the existence of a due process violation when the court admitted the testimony of the three state troopers, who had observed the defendant during the traffic stop. The defendant attempts to claim that elicitation of the troopers' testimony was not only an improper admission of evidence, but also prosecutorial impropriety. It is well established, however, that "[a]lthough . . . unpreserved claims of prosecutorial impropriety are to be reviewed under the *Williams* factors, that rule does not pertain to mere evidentiary claims masquerading as constitutional violations." *State* v. *Cromety*, 102 Conn. App. 425, 431, 925 A.2d 1133, cert. denied, 284 Conn. 912, 931 A.2d 932 (2007). As a "defendant may not transform an unpreserved evidentiary claim into one of prosecutorial impropriety to obtain review of that claim"; id., 431; we decline to review this evidentiary claim under the prosecutorial impropriety framework.[9]

The defendant's claim of impropriety with regard to the prosecutor's statements at closing argument concerning the defendant's silence is similarly without merit. Once the state troopers' testimony was admitted at trial without objection, the prosecutor was permitted to base her arguments on that evidence. Our Supreme Court has held that "[a]rguing on the basis of evidence explicitly admitted . . . cannot constitute prosecutorial [impropriety]." *State* v. *Rowe*, 279 Conn. 139, 152, 900 A.2d 1276 (2006); see also *State* v. *Cromety*, supra, 102 Conn. App. 434 ("[o]nce the testimony [at issue] was in evidence, the prosecutor was permitted to use it during final argument"). Accordingly, the prosecutor's comments during closing argument regarding the defendant's silence did not constitute prosecutorial impropriety.

B

The defendant next alleges impropriety when the prosecutor "[drew] attention to the defendant's decision not to testify." Specifically, the defendant argues that "the prosecutor asked the jury to imply the defendant's guilt from the fact that the defendant, from the time of the initial stop throughout his time at the police station, did not tell the police that he was not the driver. [The prosecutor's] questions to the officers were in effect a challenge to the defendant to testify in order to rebut the allegations she was making that his silence proved his guilt." We disagree.

"It is well settled that comment by the prosecuting attorney . . . on the defendant's failure to testify is prohibited by the fifth amendment to the United States constitution. . . . [Our Supreme Court] applies the following test in evaluating whether a prosecutor's remark has violated this right: Was the language used manifestly intended to be, or was it of such a character that the

jury would naturally and necessarily take it to be a comment on the failure of the accused to testify? . . . The prosecutor [is, however,] entitled to comment on the quality of the evidence supporting this claim." (Citations omitted; internal quotation marks omitted.) *State* v. *Grant*, 286 Conn. 499, 539, 944 A.2d 947, cert. denied, 555 U.S. 916, 129 S. Ct. 271, 172 L. Ed. 2d 200 (2008). Furthermore, the prosecutor is allowed to comment on the general weakness of the defendant's case. See *State* v. *Magnotti*, 198 Conn. 209, 220, 502 A.2d 404 (1985) ("by his failure to testify, [the defendant] cannot insulate himself from general comment on the weakness of his case, even though his failure so to testify may be perceived by the jury as having contributed to the general weakness about which comment is made"). Finally, the prosecutor is also allowed to argue forcefully not just from the facts in evidence, but also from any reasonable inferences that can be drawn from those facts. *State* v. *Luster*, 279 Conn. 414, 428–29, 902 A.2d 606 (2006).

In the present case, the prosecutor's closing argument urged the jury to make the reasonable inference that, based on the evidence, the defendant was the driver of the vehicle on the night in question. This form of argument is permissible as a comment on the weakness of the defendant's case, and is not "naturally and necessarily" intended as a comment on the defendant's failure to testify. *State* v. *Grant*, supra, 286 Conn. 539. Accordingly, we conclude that the prosecutor's statements were not improper.

C

The defendant alleges that the prosecutor's questions and comments regarding the defendant's silence had the effect of shifting the burden of proof to the defendant to prove his innocence. The defendant, however, fails to set forth how the prosecutor's statements, which challenged the defendant's alternative view of the events, actually shifted the state's burden of proof. "[I]t is not improper for the prosecutor to comment upon the evidence presented at trial and to argue the inferences that the jurors might draw therefrom . . . . We must give the jury the credit of being able to differentiate between argument on the evidence and *attempts to persuade them to draw inferences in the state's favor*, on one hand, and improper unsworn testimony, with the suggestion of secret knowledge, on the other hand. (Emphasis added; internal quotation marks omitted.) *State* v. *Stevenson*, supra, 269 Conn. 583. Additionally, "something must be allowed for the zeal of counsel in the heat of argument." (Internal quotation marks omitted.) *State* v. *Williams*, 81 Conn. App. 1, 14, 838 A.2d 214, cert. denied, 268 Conn. 904, 845 A.2d 409 (2004). The defendant has failed to establish how the prosecutor's comments went beyond permissible argument and, thus, shifted the burden of proof in the minds of the jury. Accordingly, the defendant's claim fails. See

*State* v. *Elson*, 311 Conn. 726, 750, 91 A.3d 862 (2014) ("[i]f defendant's brief fails to . . . apply law to fact . . . then claim likely will be deemed inadequately briefed").

D

The defendant next alleges that the prosecutor engaged in impropriety when she engaged in a "golden rule" argument. We disagree.

The following additional facts are relevant to our resolution of this claim. At closing argument, the prosecutor made the following statements: "To begin with, if *you* weren't drinking, if *you* weren't driving, [and] an officer starts to put *you* through field sobriety tests, don't *you* think *you* would be yelling, 'I wasn't driving,' or 'I wasn't drinking,' something to that effect?" (Emphasis added.) She continued: "[I]f *you* refuse [a Breathalyzer] test *your* license may be suspended for six months. Maybe you're familiar with the public transportation system, or lack thereof, in the northwest corner of Connecticut, but, ladies and gentlemen, if *you're* accused of operating under the influence, *you're* presented with the opportunity to take a test, and *you* refuse knowing that *you're* giving up your license for six months, why would *you* do that?" (Emphasis added.) Finally, the prosecutor commented: "[I]f it was *you*, how many times would *you* tell the officer 'it wasn't me'?" (Emphasis added.)

"[A] golden rule argument is one that urges jurors to put themselves in a particular party's place . . . or into a particular party's shoes. . . . Such arguments are improper because they encourage the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence. . . . They have also been equated to a request for sympathy. . . . [T]he golden rule claims . . . [arise] when the prosecutor ask[s] the [jurors] to put [themselves] in the place of the victim, the victim's family, or a potential victim of the defendant. . . . The danger of these types of arguments lies in their [tendency] to pressure the jury to decide the issue of guilt or innocence on considerations apart from the evidence of the defendant's culpability. . . . [Our Supreme Court] further equated golden rule arguments with the more general proscription on prosecutorial appeals to the jurors' emotions. . . . [That court] has recognized on numerous occasions that [a] prosecutor may not appeal to the emotions, passions and prejudices of the jurors. . . . [S]uch appeals should be avoided because they have the effect of diverting the [jurors'] attention from their duty to decide the case on the evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Long*, 293 Conn. 31, 53–54, 975 A.2d 660, 675 (2009).

Our Supreme Court, however, has previously held that not all arguments that ask jurors to place them-

selves in a particular party's situation implicate the prohibition on golden rule argument. For example, in *State* v. *Bell*, 283 Conn. 748, 773, 931 A.2d 198 (2007), the court concluded that the prosecutor had not violated the prohibition against golden rule argument when he "[asked] the jurors to draw inferences from the evidence that had been presented at trial regarding the actions of the defendant . . . based on the jurors' judgment of how a reasonable person would act under the specified circumstances. . . . Thus, when the state's attorney asked the jurors to put themselves in the defendant's shoes . . . and to evaluate his actions, the state's attorney properly was asking them to infer the defendant's consciousness of guilt from his deceptive actions . . . ." In such a situation, the prosecutor does not implicate the prohibition on golden rule argument because the "arguments [do] not appeal improperly to the jurors' emotions or exhort them to decide the case on anything other than the evidence presented to them." Id., 774.

Here, the prosecutor's comments at closing argument similarly requested that the jury draw inferences from the evidence based on how a reasonable innocent person would act under the circumstances. The defendant has failed to establish how such comments appealed to the jurors' emotions or otherwise pressured them to base their determination of guilt on something beyond the evidence presented at trial.

E

The defendant next argues that the prosecutor stated her personal opinion regarding his guilt. At trial, the defendant's witness, Balaam, testified that after driving the vehicle he removed the keys from the ignition and placed them in the vehicle's center console. In the video of the traffic stop entered into evidence at trial, Hazen asked the defendant where the keys to the vehicle were, and the defendant told him, "I threw [the keys] on the floor." Based on this evidence, the prosecutor argued the following at closing argument: "Why would [the defendant], if he wasn't driving, take those keys from the center console and throw them on the floor? I'd just leave them in the center console, [if] he was not driving, he didn't have to touch the keys that night." The defendant claims that this statement expressed the prosecutor's opinion of the defendant's guilt. We disagree.

"It is well established that a prosecutor may argue about the credibility of witnesses, as long as her assertions are based on evidence presented at trial and reasonable inferences that jurors might draw therefrom. . . . Moreover, [i]n deciding cases . . . [j]urors are not expected to lay aside matters of common knowledge or their own observations and experiences, but rather, to apply them to the facts as presented to arrive at an intelligent and correct conclusion." (Internal quo-

tation marks omitted.) *State* v. *Ciullo*, 314 Conn. 28, 45–46, 100 A.3d 779 (2014).

When the prosecutor stated that "I'd just leave [the keys] in the center console," she was not expressing her personal opinion regarding the defendant's guilt, but rather was requesting that the jury members apply their common knowledge in weighing the credibility of the defendant's witness. Such statements, when based on the evidence and reasonable inferences drawn therefrom, are permissible and therefore do not constitute impropriety by the prosecutor. *State* v. *Lindo*, 75 Conn. App. 408, 416, 816 A.2d 641 ("[r]emarks that are nothing more than a permissible appeal to the jurors' common sense do not constitute prosecutorial [impropriety]"), cert. denied, 263 Conn. 917, 821 A.2d 771 (2003).

### F

The defendant next argues that the prosecutor committed impropriety when she commented on a fact that was not in evidence. At closing argument, while discussing the defendant's refusal to take a Breathalyzer test, the prosecutor stated: "[I]f you refuse the test, your license may be suspended for six months. *Maybe you're familiar with the public transportation system, or lack thereof, in the northwest corner of Connecticut,* but ladies and gentlemen, if you're accused of operating under the influence, you're presented with an opportunity to take a test, and you refuse knowing your giving up your license for six months, why would you do that?" (Emphasis added.) On appeal, the defendant argues that references to public transportation in the area amounted to impropriety as it was a comment on a fact that was not in evidence. We disagree.

It is well established that a prosecutor may not comment on evidence that is not a part of the record and may not comment unfairly on the evidence in the record. See, e.g., *State* v. *Singh*, 259 Conn. 693, 718, 793 A.2d 226 (2002). In the present case, the evidence established that the defendant had "transportation issues," often borrowing his supervisor's vehicle to transport himself to and from work, and relying on his coworker to drive him home from work. Further, "it is axiomatic that jurors [i]n considering the evidence introduced in a case . . . are not . . . expected to lay aside matters of common knowledge or their own observations and experience of the affairs of life . . . ." (Internal quotation marks omitted.) *State* v. *King*, 289 Conn. 496, 521–22, 958 A.2d 731 (2008). In the present case, the prosecutor's comment did not reference a fact not in evidence. Rather, the comment simply urged the jurors, who were citizens residing in that area of the state, to apply their common knowledge and experience when considering the evidence.

### G

The defendant next alleges that the prosecutor

improperly misled the jury regarding two facts. First, the defendant argues that the prosecutor incorrectly stated at closing argument that "Hazen testified that . . . he follows the vehicle seventy-five yards" when, in fact, Hazen had testified that he approached the defendant's vehicle after it had already stopped. Second, the defendant argues that the prosecutor incorrectly claimed that both Hazen's vehicle and Barone's vehicle "were at a traffic stop with their lights on . . . ." The defendant claims that this is inconsistent with the testimony of Hazen, who stated affirmatively that the lights on his vehicle were on, but could not recall whether Barone's lights were on. The state argues that in both instances the prosecutor did not misstate the facts. We agree.

The defendant fails to establish how the prosecutor's statements were misleading or otherwise incorrect. First, the term "follow" does not necessarily mean that Hazen had pursued the defendant's vehicle while it was still moving. The term "follow" could simply mean that Hazen turned his car around, drove seventy-five yards, and parked his vehicle behind the defendant's. See Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) (defining "follow" in part as "to . . . come after"). Second, the prosecutor's statement that "their lights [were] on" was not a misstatement of the evidence. Hazen testified that he was a backup trooper, assisting Barone during a traffic stop. As the two troopers were working in tandem, it was accurate to state that "their" lights were on when they witnessed the defendant's vehicle make a U-turn and pull over to the side of the road.

### H

Lastly, the defendant argues that the prosecutor improperly implied that the defendant's witness was a liar, misstated the facts regarding the witness's relationship with the defendant, and provided a personal opinion regarding the witness's credibility. We disagree.

Although a prosecutor's closing argument may not include statements that purport to convey a personal opinion as to the credibility of a witness, a prosecutor may make statements based on reasonable inferences the jury could draw from the evidence adduced at trial. *State* v. *Ciullo*, supra, 314 Conn. 42. In the present case, the prosecutor's closing argument challenged the credibility of the defendant's witness, Balaam, who testified that he, rather than the defendant, was the driver on the night in question. The prosecutor did not call him a liar, but rather attacked his credibility solely on the basis of reasonable inferences that could have been drawn from the evidence. There was testimony from Balaam, himself, that he was a convicted felon, that he worked with the defendant, and that he spent time socially with the defendant. At closing argument, the prosecutor stated: "[Y]ou . . . need to think about [Balaam's] credibility. He is a convicted felon. And I'm

not saying that convicted felons are liars by any account, but consider that on top of [the fact] that he was a friend, an admitted friend of [the defendant]. They worked together, they visited together, socially, and often." This argument was permissible because it "posited a reasonable inference that the jury itself could have drawn without access to the [prosecutor's] personal knowledge of the case." *State* v. *Stevenson*, supra, 269 Conn. 584. Accordingly, we find no merit to the defendant's claim that the prosecutor improperly commented on Balaam's testimony during closing argument.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] The defendant performed the following three field sobriety tests: (1) the horizontal gaze nystagmus test, (2) the "walk and turn" test, and (3) the one leg stand test. The horizontal gaze nystagmus test required the defendant to follow a moving point of reference. During this test, the administrator is looking for nystagmus, which is defined as a specific involuntary eye movement. The walk and turn test required the defendant to walk heel to toe in a straight line for nine steps. The one leg stand test required the defendant to lift one leg six inches off the ground and focus his eyes on the raised foot. During these latter two tests, the administrator is evaluating the subject's balance and coordination.

[3] At trial, Hazen read into the record the following notice of rights that was read to the defendant after his arrest: " 'You are requested to submit to a blood, breath or a urine test chosen by the police officer. You may refuse a blood test, in which case another test will be selected. If you elect to submit to testing, you will be required to provide two samples. If you refuse to submit, the test will not be given. Your refusal will result in a revocation of your operator's license for twenty-four (24) hours and a suspension of your operator's license for at least six months. If you submit to the test and the test results indicate that you have an elevated blood alcohol content, your operator's license will be revoked for twenty-four (24) hours and you will be suspended for at least ninety (90) days. If you hold a commercial driver's license (CDL) your CDL will be disqualified for at least one year. Furthermore, if you are operating a commercial motor vehicle (CMV) and do not hold a CDL, your privilege to obtain a CDL as well as your privilege to operate a commercial motor vehicle, will be disqualified for at least one year. If you hold an operator's license from a state other than Connecticut, your driving privilege in Connecticut is subject to the same revocation and suspension penalties. The result of the test or the fact of a refusal may be admissible in evidence against you in a criminal prosecution for driving under the influence of alcohol and/or drugs or other offense, and evidence of a refusal may be used against you in any criminal prosecution."

[4] The defendant pleaded guilty to violating § 14-227a (g) on the basis that he had previously been convicted of driving under the influence of liquor and was sentenced to an enhanced penalty.

[5] On direct examination of Hazen, the following colloquy took place:

"[State's Attorney]: During the course of your interaction with [the defendant] on that particular night, did he ever directly deny driving the vehicle . . . ?

"[Hazen]: He did not.

"[State's Attorney]: Did he ever reference [that] another individual was driving?

"[Hazen]: He did not."

On redirect examination, the following colloquy took place:

"[State's Attorney]: Before the video came on, you approached the operator and asked for what?

"[Hazen]: Driver's license, registration, and insurance.

"[State's Attorney]: And during that time, did [the defendant] say he was not driving the vehicle?

"[Hazen]: No.

"[State's Attorney]: Did he say somebody else was driving the vehicle?

"[Hazen]: No.

"[State's Attorney]: Did he mention the name of anybody else who was driving the vehicle?

"[Hazen]: He did not."

[6] "[State's Attorney]: At any time during your interaction with Mr. Devito, did he tell you he was not driving?

"[Holcombe]: No, he did not.

"[State's Attorney]: Did he tell you someone else was driving the vehicle?

"[Holcombe]: No, he did not."

[7] "[State's Attorney]: Do you recall if [the defendant] told you at any time that he wasn't driving?

"[Barone]: No.

"[State's Attorney]: No, you don't recall, or, no, he did not?

"[Barone]: No, I don't recall."

[8] Although the defendant failed to object to the alleged improprieties at trial, his claim nevertheless is reviewable. "[I]n cases involving incidents of prosecutorial [impropriety] that were not objected to at trial . . . it is unnecessary for the defendant to seek to prevail under the specific requirements of [*Golding*], and, similarly, it is unnecessary for a reviewing court to apply the four-pronged *Golding* test. The reason for this is that the touchstone for appellate review of claims of prosecutorial [impropriety] is a determination of whether the defendant was deprived of his right to a fair trial, and this determination must involve the application of the factors set [forth] by this court in *State* v. *Williams*, [supra, 204 Conn. 540]." (Internal quotation marks omitted.) *State* v. *Andrews*, supra, 313 Conn. 280. "The application of the *Williams* factors . . . is identical to the third and fourth prongs of *Golding*, namely, [1] whether the constitutional violation exists, and [2] whether it was harmful. . . . Requiring the application of both *Williams* and *Golding*, therefore, would lead . . . to confusion and duplication of effort. Furthermore, the application of the *Golding* test to unchallenged incidents of [impropriety] tends to encourage analysis of each incident in isolation from one another. Because the inquiry must involve the entire trial, all incidents of [impropriety] must be viewed in relation to one another and within the context of the entire trial. The object of inquiry before a reviewing court in claims involving prosecutorial [impropriety], therefore, is always and only the fairness of the entire trial, and not the specific incidents of [impropriety] themselves. Application of the *Williams* factors provides for such an analysis, and the specific *Golding* test, therefore, is superfluous." (Citation omitted.) *State* v. *Stevenson*, supra, 269 Conn. 573–74.

[9] We further note that, even if we were to review this claim under the *Williams* factors, the defendant would be unable to establish how the prosecutor's questions to the three officers constituted impropriety. Due process violations, under *Doyle*, only apply to references to post-*Miranda* silence. "Because it is the *Miranda* warning itself that carries with it the promise of protection, the United States Supreme Court has concluded that the prosecution's use of silence prior to the receipt of *Miranda* warnings does not violate due process." *State* v. *Esposito*, 223 Conn. 299, 319, 613 A.2d 242 (1992); see also part I of this opinion.